**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF ILLINOIS**
**EASTERN DIVISION**

| | | |
|---|---|---|
| **UNITED STATES EQUAL EMPLOYMENT OPPORTUNITY COMMISSION,** | ) ) ) | |
| **Appellant,** | ) ) | |
| **v.** | ) ) | **No. 07 C 4115** |
| **WATKINS MOTOR LINES, INC.,** | ) ) | **Judge Rebecca Pallmeyer** |
| **Respondent.** | ) ) | |

## MEMORANDUM OPINION AND ORDER

In response to a series of three incidents of worker-on-worker violence in its facilities, in June 2004 Watkins Motor Lines, Inc. ("Watkins") adopted a policy of refusing to hire individuals convicted of violent crimes. Two months later, Watkins rejected the employment application of Lyndon Jackson, who had pleaded guilty to criminal sexual assault in 1994. This decision was admittedly based on his conviction. Jackson filed a charge of race discrimination against Watkins with the United States Equal Employment Opportunity Commission ("EEOC" or "Commission") on September 14, 2004. In February 2005, during the EEOC's investigation, Watkins proposed a settlement in which it would make certain changes to its policy; the EEOC rejected this offer, however, and on April 8, 2005, issued a subpoena for records. Meanwhile, Watkins successfully negotiated a settlement directly with Jackson, who sought to withdraw his charge in January 2006. The Code of Federal Regulations empowers the EEOC to refuse to consent to withdrawal if that withdrawal would defeat the purposes of Title VII. In this case, the EEOC refused its consent. Based on Jackson's desire to withdraw, however, Watkins refused to comply with the pending subpoena. The EEOC has filed this action to enforce the subpoena.

Existence of a valid charge of discrimination is a jurisdictional prerequisite to this sort of enforcement action, and Watkins contends that there is no valid charge here. Watkins argues, first, that the Federal Regulation permitting the EEOC to withhold consent to withdrawal of a charge of

discrimination–29 C.F.R. § 1601.10–is invalid. In the alternative, Watkins, which has ceased its business operations, argues that the EEOC's refusal to consent to withdrawal in this case was an abuse of discretion. Watkins thus asks the court to dismiss the EEOC's action for lack of subject matter jurisdiction, pursuant to Federal Rule of Civil Procedure 12(b)(1).[1] The court declines to address Watkins' challenge to the validity of the EEOC regulation but, for the reasons explained below, Watkins' motion to dismiss the EEOC's enforcement action is granted.

## FACTUAL BACKGROUND

### I. Watkins' Contested Policy

Until it went out of business in September 2006, Watkins was a "less-than-truckload" trucking company headquartered in Lakeland, Florida. (Watkins Mem. at 1.) As of June 2004, Watkins had experienced three incidents of worker-on-worker violence in the previous five years. (*Id.*) In August 1999, a Watkins employee shot and killed another employee and then himself at a Charlotte, North Carolina terminal. (*Id.* at 2.) In June 2001, a Watkins employee shot another employee at a Lakeland, Florida print shop. (*Id.*) Then, in November 2003, a former employee went on a shooting rampage at a Watkins terminal in Cincinnati, Ohio, murdering two Watkins employees and attempting to murder three others. (*Id.* at 1-2.) Although there is no indication in the record that any of the three perpetrators had been convicted of a violent crime before the incidents in question, Watkins became concerned about the safety of its workplaces. In June 2004, Watkins instructed its human resources managers that they were not to hire individuals with convictions for violent crimes. (*Id.* at 2.)

The EEOC's position is that an employer's policy of refusing to hire applicants who have been convicted of crimes is generally unlawful. The EEOC manual states that such a policy "has an adverse impact on Blacks and Hispanics in light of statistics showing that they are convicted at

---

[1] Watkins also argues that the EEOC investigation is moot, and that the enforcement action was improperly brought in the Northern District of Illinois. The court reaches neither issue.

a rate disproportionately greater than their representation in the population." (EEOC Compliance Manual: Appendix A–Conviction Records, Ex. B to Watkins Mem.)  Thus, "in the absence of a justifying business necessity," such a policy is unlawful under Title VII.  (*Id.*)  To demonstrate a justifying business necessity, an employer must show that it has considered the nature and gravity of the offense, the time that has passed since conviction and/or completion of the sentence, and the nature of the job held or sought.  (*Id.*)  An employer need not consider an individual's employment history or efforts at rehabilitation.  (*Id.*)

Watkins notes that an employer has an obligation to "furnish to each of his employees employment and a place of employment which are free from recognized hazards that are causing or are likely to cause death or serious physical harm to his employees."  29 U.S.C. § 654(a)(1). Steven H. Newhouse, Vice President of Human Resources for Watkins since May 1991, attested that Watkins' policy was intended to protect employees from experiencing the sort of tragic events to which they had been subject in prior years.  (Newhouse Decl. dated 3/14/05 ¶¶ 2, 5, Ex. A to Watkins Mem.)  According to Newhouse, Watkins employees had "a strong sense of family," so the tragedies hit them particularly hard.  (*Id.* ¶ 5.)  Newhouse was concerned in particular that a number of new hires whose files he reviewed had been convicted of assault, manslaughter, and domestic violence.  (*Id.* ¶ 6.)  He therefore told human resources staff that, no matter how long ago the crimes had occurred, he did not want such individuals hired. (*Id.*)  He acknowledged, however, that clearly-written laws that prohibit discrimination based on criminal convictions would take precedence over his directives.  (*Id.*)  Watkins contends that its policy does not constitute race discrimination under the EEOC's manual because it is justified by business necessity.

## II.     The EEOC's Investigation

In April 1994, Lyndon Jackson pleaded guilty to aggravated criminal sexual abuse against his wife, resulting from a September 1993 domestic dispute.  (Jackson Aff. dated 9/12/07, Ex. 1 to EEOC Resp.)  In January 1994, he and his wife reconciled and, eventually, had two more children,

in addition to the two they already had.  (*Id.*; EEOC Resp. at 2.)  In 1995, Griffin Wheel Company, Jackson's employer since 1992, promoted Jackson from the position of CAD/Drafter to CAD/Designer.  (*Id.*; Jackson Aff.)  While the parties do not discuss the details of Jackson's employment in any depth, the EEOC contends that he continues to work as a CAD/Designer today, after nearly fifteen years of work with the same employer.  (EEOC Resp. at 2.)  Jackson held a second job as a security guard from 1995 until his resignation in 2000; he was promoted to the position of Security Supervisor in 1997.  (Jackson Aff.)  Jackson has a stable personal life; he has lived in the same building for over ten years and serves as president of his condominium association.  (*Id.*)

Jackson applied to work at Watkins in 2004 as a package handler or dock worker in its Schaumburg, Illinois facility.  (Employment App. dated 7/27/04, Ex. G to Watkins Mem.; EEOC Resp. at 10.)  In response to a question in the application, Jackson disclosed his criminal sexual abuse conviction.  (Employment App.)  On or about August 12, 2004, Watkins declined to hire Jackson. (Watkins Mem. at 4.)  On September 14, 2004, Jackson filed a Charge of Discrimination with the EEOC, claiming that Watkins's refusal to hire him constituted race discrimination.  (Charge of Discrimination dated 9/14/04, Ex. H to Watkins Mem.)  Watkins acknowledges that Jackson was not hired because of his criminal sexual abuse conviction.  (Watkins Mem. at 4.)  Newhouse attested that Watkins explained to the EEOC in November 2004 and January 2005 that its policy is to exclude applicants based on the nature of the crime (in Jackson's case, a violent crime) rather than focus on whether the crime was classified as a misdemeanor or as a felony.  (Newhouse Decl. ¶ 9.)  It is not clear whether Watkins automatically excluded all individuals convicted of violent crimes from employment.  But Watkins also informed the EEOC that hiring decisions are otherwise based on the nature of the job and the crime and that the company does consider the time between conviction and job application on a case-by-case basis.  (*Id.*)

The EEOC continued its investigation.  On January 20, 2005, the EEOC submitted to

Watkins a Request for Information ("RFI"); the EEOC requested that Watkins respond to the RFI by February 14, 2005. (Letter from A. Burkholder to T. Clinnin of 1/20/05, Ex. J to Watkins Mem.) The EEOC also invited Watkins to contact the EEOC if it wished to enter into settlement negotiations. (*Id.*) The EEOC clarified the RFI by e-mail dated January 23, 2005 and offered to photocopy the requested documents. (Application for an Order to Show Cause Why Subpoenas Should Not be Enforced ("Application") ¶ 6.) On February 17, 2005, Watkins articulated a proposal for settlement of the charges. (Letter from J. Canny to A. Burkholder of 2/17/05 with attached Proposed Settlement Agreement , Ex. K to Watkins Mem.) In that settlement proposal, Watkins offered to adopt a new policy regarding consideration of convictions in employment applications in exchange for the EEOC's agreement to terminate its investigation. (*Id.*) Watkins' new policy would make clear that a conviction does not automatically bar employment and that, when evaluating the significance of a conviction, Watkins would take into account the nature and gravity of the offense, the time passed since conviction or completion of the sentence, and the nature of the job held or sought. (*Id.*) For one year, Watkins would provide the EEOC with quarterly reports identifying the number of applicants to the Schaumburg facility with convictions, the nature of the convictions, the applicant's race or national origin, and disposition of the application. (*Id.*) The proposed settlement agreement does not afford relief to Jackson himself. (*Id.*)

The EEOC promptly rejected this offer as "unacceptable" without further explanation. (Letter from A. Burkholder to J. Canny of 2/22/05, Ex. Z to Watkins Mem.) In the same letter, the EEOC reminded Watkins of the outstanding RFI. (*Id.*) Watkins failed to respond to the RFI, prompting the Commission to issue a subpoena on April 8, 2005. (Application ¶ 7.) Watkins filed a Petition to Revoke Subpoena with the EEOC on April 19, 2005. (*Id.* ¶ 8.) The EEOC granted the petition in part and denied it in part eighteen months later, on October 18, 2006 (there is no explanation in the record for the delay). (*Id.*) In the interim, two significant events occurred: first, at some unspecified point, Watkins and Jackson began their own settlement negotiations, ultimately resulting in a

settlement in principle. As part of that agreement, Jackson sought to withdraw his charge of discrimination in January 2006. (Request for Withdrawal of Charge of Discrimination dated 1/24/06, Ex. P to Watkins Mem.) The EEOC denied that request on February 13, 2006, on the ground that, in the EEOC's view, withdrawal would defeat the purposes of the law. (Notice of Determination filed in *Watkins v. EEOC*, Ex. R to Watkins Mem.) Second, in September 2006, Watkins sold its assets to Federal Express; in connection with this asset sale, Watkins terminated its employees, ceased operations, and went out of business. (Linebarier Decl. dated 8/20/07 ¶¶ 2-3, Ex. V to Watkins Mem.) Although Watkins continues to exist as a Florida corporation, it no longer is engaged in business and has no offices, facilities, or employees. (*Id.* ¶ 4.) Following these developments, Watkins treated the EEOC's October 2006 determination as a modified subpoena, out of what it characterizes as "an abundance of caution, (Watkins Mem. at 7), and filed a Petition to Revoke Modified Subpoena with the EEOC on November 6, 2006. (Application ¶ 9.) Then, on June 25, 2007, Watkins notified the EEOC that it would not comply with the modified subpoena. (*Id.*)

On July 23, 2007, the EEOC filed this action, seeking an order directing Watkins to appear and show cause why an order should not issue directing Watkins to comply with the modified subpoena; an order directing Watkins to comply; an award of its costs in bringing the action; and such further relief as may be necessary and appropriate. (Application at 2-3.) The action was filed in the Northern District of Illinois because the EEOC's Chicago District Office is investigating Jackson's charge. (EEOC Resp. at 10.) Jackson had applied to work at Watkins' Schaumburg, Illinois facility; in addition, many decision makers, as well as other applicants allegedly excluded because of Watkins' policy, are located in the Chicago area. (*Id.*) On July 27, 2007, the EEOC moved the court to direct Watkins to comply with the EEOC subpoena. (Docket Entry No. 7.) The court initially granted that motion and directed Watkins to file a written response and appear at a September 5, 2007 hearing. (Docket Entry No. 8.) On August 22 and 23, 2007, Watkins filed four motions: a motion to dismiss for lack of jurisdiction (Docket Entry No. 9), a motion to clarify the

6

court's August 2 order (Docket Entry No. 11), a motion to stay (Docket Entry No. 12), and a motion

to dismiss the EEOC Application for lack of subject matter jurisdiction (Docket Entry No. 13). Those

motions were stricken (Docket Entry No. 17) when the parties failed to appear on the presentment

date (August 28, 2007), but Watkins renewed the motion to dismiss, the motion to clarify, and the

motion to stay. (Docket Entries No. 18, 22, & 24.) At the September 5, 2007 hearing, the court took

those motions under advisement (Docket Entry No. 27), and they are now fully briefed.

### III.     Florida Litigation

In addition to the proceedings before this court, Watkins has raised related claims in two

cases in the United States District Court for the Middle District of Florida. On June 7, 2005, Watkins

filed a Freedom of Information Act ("FOIA") action against the EEOC, seeking declaratory and

injunctive relief. Complaint, *Watkins Motor Lines, Inc. v. EEOC*, No. 8:05-cv-1065-SCB-TBM (M.D.

Fla. June 7, 2005). In that action, Watkins sought the disclosure of certain agency records in

connection with Jackson's Charge. *Id.* The Defendants–the EEOC, Cari M. Dominguez (Chair of

the EEOC), and Eric Dreiband (onetime General Counsel of the EEOC, though he had resigned

by the time of the briefing)–moved for summary judgment in December 2005. Defendants' Motion

for Summary Judgment and to Dismiss, *Watkins Motor Lines, Inc. v. EEOC*, No. 8:05-CV-1065-T-

24TM (M.D. Fla. Dec. 22, 2005). The court granted that motion, but ruled that the EEOC was

required to produce and disclose to Watkins a copy of the applicant records that Watkins itself had

provided to the EEOC. *Watkins Motor Lines, Inc. v. EEOC*, No. 8:05-CIV-1065-T-24TM, 2006 WL

905518, at *10-11 (M.D. Fla. Apr. 7, 2006). The court refused to compel the EEOC to produce any

other records gathered or prepared by the EEOC. *Id.*

In reaching its decision, the Florida court examined Exemption 7(A) to FOIA, 5 U.S.C. §

552(b)(7)(A). That provision exempts from the reach of FOIA any "records or information compiled

for law enforcement purposes, but only to the extent that the production of such law enforcement

records or information . . . could reasonably be expected to interfere with enforcement

7

proceedings." *Id.* Watkins's challenge to application of Exemption 7(A) required the court to determine whether a law enforcement proceeding was pending and whether Jackson's request to withdraw his charge of discrimination–made during the course of litigation–effectively terminated the law enforcement proceeding. As explained above, in January 2006–one month after the EEOC filed its motion–Watkins sought to withdraw his charge; in February 2006–while that motion was pending–the EEOC notified Jackson and the court of its refusal to consent. The court found that a prospective law enforcement proceeding existed because the EEOC had not consented to withdrawal. *Watkins*, No. 8:05-CIV-1065-T-24TM, 2006 WL 905518, at *4 (citing *EEOC v. Morgan Stanley & Co., Inc.*, 132 F. Supp. 2d 146, 153 (S.D.N.Y.2000)). That Watkins challenged the EEOC's denial of consent to Jackson's motion to withdraw the charge raised no genuine issue of material fact regarding whether a prospective law enforcement proceeding was pending. *Id.* (citing *E.E.O.C. v. Frank's Nursery & Craft's, Inc.*, 177 F.3d 448, 456 (6th Cir.1999)). Thus, the court concluded that Exemption 7(A) was applicable to Watkins' request. On appeal, the Eleventh Circuit held: "we find no reversible error in the district court's holding that the materials contained in the Equal Employment Opportunity Commission's ongoing investigation were properly withheld from Watkins Motor Lines, Inc." *Watkins Motor Lines, Inc. v. EEOC*, 228 Fed. Appx. 928 (11th Cir. 2007) (unpublished opinion).

Following the EEOC"s refusal to consent to Jackson's withdrawal–and while the FOIA petition was pending–Watkins filed a second action, seeking judicial review of the agency's refusal to consent to withdrawal of the charge, declaratory relief, and injunctive relief. Complaint, *Watkins Motor Lines, Inc. v. EEOC*, No. 8:06-cv-00383-SCB-TGW (M.D. Fla. Mar. 8, 2006). Then, in May 2006, Watkins appealed the final judgment of the district court in its FOIA action to United States Court of Appeals for the Eleventh Circuit. Notice of Appeal, *Watkins Motor Lines, Inc. v. EEOC*, No. 8:05-cv-1065-SCB-TBM (M.D. Fla. May 22, 2006). On August 9, 2006, before the EEOC answered the complaint in the second case, Watkins voluntarily dismissed that action without prejudice

8

pursuant to Federal Rule of Civil Procedure 41(a)(1)(I). Notice of Voluntary Dismissal, *Watkins Motor Lines, Inc. v. EEOC*, No. 8:06-cv-00383-SCB-TGW (M.D. Fla. Aug. 9, 2006). Watkins noted in its notice of voluntary dismissal that the pending Eleventh Circuit appeal of its FOIA claims might require the Court of Appeals to decide certain issues raised in its 2006 complaint, rendering the second case unnecessary.

The case before this court is, thus, the first to squarely present the issue of whether the EEOC can show that its refusal to consent to withdrawal of Jackson's charge was not arbitrary and capricious. Only if it meets this burden is there a valid charge of discrimination in this case; without a valid charge, the court lacks jurisdiction to enforce the subpoena. The court concludes that the EEOC abused its discretion by refusing to consent to Jackson's withdrawal of his charge and, accordingly, declines to enforce the subpoena.

## **DISCUSSION**

### I.     **Legal Standard**

When determining whether it has subject matter jurisdiction, the court accepts the Application's well-pleaded factual allegations as true and draws all reasonable inferences from those allegations in the EEOC's favor. *Sprint Spectrum L.P. v. City of Carmel*, 361 F.3d 998, 1001 (7th Cir. 2004). But a plaintiff's "[f]actual allegations must be enough to raise a right to relief above the speculative level." *In re McDonald's French Fries Litig.*, 503 F. Supp. 2d 953, 956 (N.D. Ill. 2007) (quoting *Bell Atlantic Corp. v. Twombly*, 127 S. Ct. 1955, 1965 (2007)). Moreover, because the presumption is that jurisdiction is lacking, *Sprint*, 361 F.3d at 1001, it is the EEOC's "responsibility to clearly allege facts that invoke federal court jurisdiction." *Id.; RWB Servs., LLC v. Rally Capital Servs., LLC*, 502 F. Supp. 2d 787, 790 (N.D. Ill. 2007) ("The burden of proof on a 12(b)(1) issue is on the party asserting jurisdiction.") (citation omitted). For purposes of this motion the court understands that the EEOC bears the burden of establishing that a valid pending charge supports the court's exercise of jurisdiction here.

## `II. No Valid Charge

The existence of "a valid charge of discrimination 'is a jurisdictional prerequisite to judicial enforcement of a subpoena issued by the EEOC.'" *EEOC v. United Air Lines, Inc.*, 287 F.3d 643, 650 (7th Cir. 2002) (quoting *EEOC v. Shell Oil Co.*, 466 U.S. 54, 65 (1984)). This rule is directly linked to the EEOC's statutory authority:

> The EEOC's investigative authority is tied to charges filed with the Commission; unlike other federal agencies that possess plenary authority to demand to see records relevant to matters within their jurisdiction, the EEOC is entitled to access only to evidence "relevant to the charge under investigation."

*Id.* (quoting *Shell Oil*, 466 U.S. at 64 (quoting 42 U.S.C. § 2000e-8(a); footnotes omitted)). Thus, if Jackson's charge of discrimination is withdrawn, the court is without jurisdiction to enforce the EEOC's subpoena.

### A. Effect of Private Settlement

That Jackson has settled his claims with the EEOC is of no moment to the EEOC's right to pursue claims against Watkins. The EEOC points out, rightly, that even if Jackson has settled his claims against Watkins, it is entitled to pursue victim-specific monetary relief. Pursuant to Title VII and the ADA, the EEOC may file an enforcement action to vindicate a public interest even when the only relief it pursues is victim-specific. *EEOC v. Waffle House, Inc.*, 534 U.S. 279, 295-96 (2002). Thus, an agreement between an employer and employee to arbitrate employment-related disputes does not bar the EEOC from pursuing victim-specific relief in court. *Id.* at 298. Put another way, the "doctrinal heart" of *Waffle House* is that "the EEOC is not in privity with the victims for whom is seeks relief." *EEOC v. Sidley Austin LLP*, 437 F.3d 695, 696 (7th Cir. 2006).

*Waffle House* left open the question of "whether a settlement or arbitration judgment would affect the validity of the EEOC's claim or the character of relief the EEOC may seek." *Waffle House*, 534 U.S. at 297. Two courts in this district have answered this question in the negative, holding that, even where there is a settlement agreement in place, the EEOC–"an enforcement

10

vehicle for the public interest"–is entitled to seek monetary relief. *EEOC v. Continental Airlines Inc.*, No. 04 C 3055, 2006 WL 3505485, at \*1-2 (N.D. Ill. Dec. 4, 2006); *see also EEOC v. Int'l Profit Assocs., Inc.*, No. 01 C 4427, 2008 WL 485130, at \*2 (N.D. Ill. Feb. 22, 2008) ("the EEOC may pursue victim-specific monetary relief, even if a settlement agreement has been reached between a defendant and individual claimants") (collecting cases).  Thus, in *Continental*, a confidential settlement agreement between the claimant and her employer did not preclude the EEOC from seeking monetary relief on behalf of the victim at trial.  2006 WL 3505485, at \*2.  To avoid double recovery for the claimant, the court may, post-judgment, offset any monetary relief the EEOC obtains by the amount of the settlement agreement.  *Int'l Profit*, 2008 WL 485130, at \*2*; Continental*, 2006 WL 3505485, at \*2.  There was no specific discussion in either *Continental* or *International Profit* of whether the complaining party had sought to withdraw the charge of discrimination, however.

### B.      Validity of 29 C.F.R. § 1601.10

EEOC regulations make explicit that "[a] charge filed by . . . a person claiming to be aggrieved may be withdrawn only by the person claiming to be aggrieved and only with the consent of the Commission."  29 C.F.R. § 1601.10.  The regulations provide, further, that the Commission may consent to withdrawal only if a withdrawal will not "defeat the purposes of Title VII."  *Id.* Watkins contends that the substantive nature of 29 C.F.R. § 1601.10 exceeds the EEOC's rulemaking powers.  (Watkins Mem. at 11.)

Congress did not confer rulemaking authority on the EEOC when enacting Title VII; thus, courts give various levels of deference to the rules the EEOC has promulgated, depending on "the thoroughness evident in its consideration, the validity of its reasoning, its consistency with earlier and later pronouncements, and all those factors which give it power to persuade, if lacking power to control."  *EEOC v. Arabian Am. Oil Co.*, 499 U.S. 244, 257 (1991) (quoting *Gen. Elec. Co. v. Gilbert*, 429 U.S. 125, 141 (1976)), *superseded by statute on other grounds as recognized in*

*Landgraf v. USI Film Prods.*, 511 U.S. 244, 251 (1994)).  The EEOC contends that 29 C.F.R. § 1601.10 sets forth a valid rule under these standards.  The EEOC notes that the Seventh Circuit has cited 29 C.F.R. § 1601.10 and stated that, if the "EEOC does not consent to the withdrawal of a charge, it may proceed on its own initiative to prosecute a civil action under § 2000e-5."  *EEOC v. Harvey L. Walner & Assocs.*, 91 F.3d 963, 969 (7th Cir. 1996).  Indeed, in the FOIA litigation, the United States District Court for the Middle District of Florida expressly rejected Watkins' objection to the validity of the Regulation.  *Watkins*, No. 8:05-CIV-1065-T-24TM, 2006 WL 905518.  Watkins raised this argument on appeal to the Eleventh Circuit (Initial Brief of Plaintiff/Appellant at 21-25, Ex. 4 to EEOC Resp.), as well, but that court affirmed the district court's determination.  *Watkins*, 228 Fed. Appx. at 928.

The court is not inclined to reexamine this issue.  In fact, neither party has engaged in any meaningful discussion of the deference to which the regulation is entitled under the *Arabian American Oil* standard.  *See Econ. Folding Box Corp. v. Anchor Frozen Foods Corp.*, 515 F.3d 718 (7th Cir. 2008) (noting that it is not the duty of the courts to construct parties' legal arguments for them, and that conclusory arguments are waived).  Moreover, the court need not reach that issue in this case; as explained below, even if the Regulation is valid, the court concludes that the EEOC abused its discretion in refusing the consent in this case.

## C. EEOC's Denial of Consent to Withdraw

Watkins contends that the EEOC's refusal to consent to withdrawal was *ultra vires* in this case.  (Watkins Mem. at 12.)  According to Watkins, its policy was justified by business necessity, and withdrawal of Jackson's charge therefore could not defeat the purposes of Title VII; in addition, because the charge is now moot in light of the Jackson-Watkins settlement and the termination of Watkins' business operations, there is no basis for the EEOC's refusal to consent to withdrawal.  (*Id.*)  Watkins acknowledges that the court's review is only for abuse of discretion.  *EEOC v. United States Fidelity & Guaranty Co.*, 414 F. Supp. 227, 246 (D. Md. 1976).  *Cf.* 5 U.S.C. § 706(2)

(empowering district courts to "hold unlawful and set aside" any agency action found to be "arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law").  In *Fidelity & Guaranty*, the court found no abuse of discretion when the EEOC refused to accept withdrawal of a charge because it appeared that the employee's decision to withdrawn was in response to a veiled threat of job loss.  414 F. Supp. at 246.  While the EEOC has broad discretion to determine which cases to pursue and, ultimately, to prosecute, following *Fidelity & Guaranty*, the court here evaluates the agency's action in the narrower context of its decision to refuse to consent to withdrawal of a charge of discrimination.

In fact, the EEOC apparently agrees that its refusal to consent to withdrawal is subject to judicial review under an abuse of discretion standard.  (EEOC Resp. at 9.)  Rather than challenge the reviewability of its refusal to consent, the EEOC instead presents arguments in support of that decision, focusing on its interests in pursuing the investigation and the propriety of Watkins' policy. (*Id.*)   Initially, in the letter expressing its refusal to consent, the EEOC stated summarily that it "cannot consent to have this charge withdrawn because its withdrawal would defeat the purposes of the law."  (Letter from J. Rowe to L. Jackson of 2/13/06.)  In its briefs in this case, the EEOC explains that it is entitled to pursue its investigation of Watkins in order to assess whether the policy was justified by business necessity.  (EEOC Resp. at 9.)

In reviewing the EEOC's exercise of discretion, the court notes, first, that Title VII has two "central statutory purposes:" they are "eradicating discrimination throughout the economy and making persons whole for injuries suffered through past discrimination." *Landgraf*, 511 U.S. at 254 (1994) (quoting *Albemarle Paper Co. v. Moody*, 422 U.S. 405, 421 (1975)).  In the circumstances presented here, the EEOC's refusal to consent to withdrawal appears to further neither of these purposes.  With regard to the first statutory purpose–eradicating discrimination throughout the economy–the unique facts and procedural posture of this case must be considered.  Watkins is a defunct company, and its policy has been abandoned.  Having ceased operations, it is plainly

13

incapable of violating Title VII.  Thus, pursuing charges against Watkins cannot prevent future violations by the company.  To the extent the EEOC seeks to use the Watkins policy as a sort of "test case," in which to establish a principle and deter violations by other companies, the court notes the potential danger of forcing Watkins to defend a policy in which it no longer has any stake. Without effective advocacy, any result reached in this court may be unsound.

This concern is particularly significant in light of the complicated issues surrounding Watkins' policy. Watkins contends the policy is justified by Watkins's statutory obligation to furnish its employees with a place of employment that is free from recognized hazards likely to cause death or physical harm.  *See* 29 U.S.C. § 654(a)(1).  Watkins cites a study of workplace violence suggesting that preventive measures to address workplace violence might include identification of potentially violent applicants by "red flags" such as history of drug or alcohol abuse, past conflicts with co-workers, and past convictions for violent crimes.  (Nat'l Ctr. For the Analysis of Violent Crime, Fed. Bur. Of Investig., *Workplace Violence: Issues in Response*, 20-21 (2002), Ex. F to Watkins Mem.)  Likewise, a Virginia Department of Labor and Industry report has noted that most offenders who committed violent acts in the workplace had previous convictions for violence.  (Dep't of Labor & Indus., House Doc. No. 19, *Study of Workplace Violence in the Commonwealth* 17 (2000), Ex. E to Watkins Mem.)  In other words, government entities have made findings that might support the effectiveness of Watkins's policy in preventing workplace violence.  *See also El v. Southeastern Pennsylvania Transp. Auth.*, 479 F.3d 232 (3rd Cir. 2007) (in a case challenging termination based on a 40-year old homicide conviction as race discrimination, transportation authority was entitled to summary judgment on the basis of evidence, including expert testimony, that its policy of refusing to hire persons with convictions for violence or "moral turpitude" was job-related and consistent with business necessity); *EEOC v. Carolina Freight Carriers Corp.*, 723 F. Supp. 734, 753 (S.D. Fla. 1989) ("Can an employer refuse to hire persons convicted of a felony even though it has a disparate impact on minority members?  This court's answer is a firm 'Yes'.").

At a minimum, Watkins' policy raises challenging issues regarding potential workplace discrimination, and the danger of reaching an unsound result in the absence of effective advocacy is acute. The court cannot direct the EEOC to investigate other entities employing similar practices, but is concerned that the agency's refusal to permit withdrawal of a now-settled charge against a defunct business would not eradicate current or future discrimination perpetrated by Watkins or any other entity.

Turning to the second purpose–making persons whole for injuries suffered through past discrimination–that Jackson and Watkins have reached a settlement indicates that he has been made whole for any injuries he suffered, and that the EEOC's refusal to withdraw consent may actually interfere with making him whole. The EEOC does not challenge the terms of the settlement agreement as being insufficient to compensate Jackson. Unlike in *Fidelity & Guaranty*, there is no suggestion that Jackson was coerced into withdrawing his charge. As discussed above, the EEOC may prosecute charges even after a settlement has been reached between the private parties and might also seek to litigate on behalf of other victims of discrimination reasonably related to the discrimination Jackson allegedly suffered, if it discovered this information during investigation of Jackson's charge. *See EEOC v. United Parcel Serv.*, 94 F.3d 314, 318 (7th Cir. 1996). In this case, however, the EEOC has not suggested that other victims it may have uncovered can only seek relief through this litigation. Moreover, Watkins' history with workplace violence suggests a unique business situation, which might render any decision concerning business necessity of little general applicability. Of course, this is not, ultimately, a determination for the court to make, and the court remains cognizant that the EEOC might also have determined that Watkins had engaged in discrimination that Jackson's settlement agreement is insufficient to remedy. If so, the withdrawal of Jackson's charge would not tie its hands, as it could file a commissioner's charge. *See EEOC v. Quad/Graphics, Inc.*, 63 F.3d 642, 644 (7th Cir. 1995) ("A Commissioner charge is a discrimination claim issued by an EEOC Commissioner alone; there is no private charging party.").

Thus, there are alternatives to withdrawal of consent in this case, and no indication that Jackson's withdrawal would "defeat" the purposes of Title VII.

Moreover, the settlement between Jackson and Watkins makes Jackson whole through conciliation, which is consistent with the aims of Title VII.[2] Courts may enforce pre-determination settlement agreements between private plaintiffs because "[t]he congressional goal of enforcing Title VII through conciliation and voluntary compliance would be hampered if employees could not seek to enforce in federal courts conciliation agreements between themselves, their employers and the EEOC." *Ruedlinger v. Jarrett*, 106 F.3d 212, 215 (7th Cir. 1997) (citation omitted). While the EEOC was not party to the settlement reached in this case, the general principle that voluntary settlements serve Title VII's purposes is relevant here. *See Lacy v. Ameritech Mobile Communs.*, 965 F. Supp. 1056, 1063 (N.D. Ill. 1997) ("conciliation. . . effectuates Title VII's primary goal of securing voluntary compliance with its mandates") (quoting *Schnellbaecher v. Baskin Clothing Co.*, 887 F.2d 124, 126 (7th Cir. 1989)). In other words, Watkins' settlement negotiations with Jackson furthered rather than defeated Title VII's purposes.

Finally, the court notes that, when the EEOC issued its refusal to consent, its motion for summary judgment was pending in the FOIA proceeding in the Middle District of Florida. Ultimately, the EEOC's motion for summary judgment was granted in part based on Exemption 7(A): disclosure is not required if it could reasonably be expected to interfere with enforcement proceedings. In other words, refusal to consent arguably supported the EEOC's litigation posture in the earlier case. Had the EEOC withdrawn its consent, there would have been no enforcement proceeding pending and no apparent basis for invoking Exemption 7(A). The EEOC has provided no basis for its

---

[2]    There is some dispute as to whether the settlement has been consummated or is contingent upon withdrawal of the charge. (EEOC Resp. at 3-4; Watkins Reply at 9.) For purposes of this analysis, the distinction is irrelevant: what is critical is that the settlement furthers the purposes of Title VII. And it is clear that withdrawal of the charge would effectuate the settlement agreement.

decision to adhere to its refusal to consent that is not arbitrary and capricious, and the court can conceive of none.

## CONCLUSION

The court concludes that in the unique circumstances presented here, the EEOC abused its discretion in refusing to permit withdrawal of Jackson's charge. Because withdrawing the charge deprives the court of jurisdiction to enforce the EEOC's subpoena, Watkins Motor Lines, Inc.'s motion to dismiss for lack of subject matter jurisdiction (18) is granted. Watkins' motion to clarify (22) and its motion to stay (24) are denied as moot.

ENTER:

Dated: March 26, 2008

_____
REBECCA R. PALLMEYER
United States District Judge